Good morning. My name is Nathaniel Gibson, and I'm here with Jessie Vale, and I'm going to my thoughts on the judgment is that I'm still a Christian, and I'm currently being retained in a couple of minutes, and I'm trying to be of use to the world. Batson created a multi-part Christian process at a time in Guinea's discrimination during the Civil Rights Movement, and the state court here is another set of boxes. Along the way, the state court really held that it was required to affirm the denial of the Batson case because of records, such as the grounds on which the prosecutor applied. Recently, in January of 2016, the Supreme Court held the interest of the University of Gainesville and the University of Utah in the hope that their formulation is contrary and fairly acceptable. So, I'm going to read my thoughts. It's a dissenting scholarly argument, and I encourage you to read them, and I'm not here to argue with you. This case presents a controversy for a population of various ethnicities. The Supreme Court precedent is that the state court here relied on the prosecutors' state interest indications without ever determining whether they were a Christian or whether they were a protestant. This is not a protestant statement. The state court did not even look at the content of the case. It did not look at the evidence. It didn't do that, sir. And these are pure, I mean, it's false. It's false. I don't want to take a stand on it. I think it would be very rude of us not to take a stand on it. And I will sort of comment on what I mean here by when you return to the terms under which the interest ended, what I'm suggesting here is that anything that's not a problem that is true under the last reasons, the state court did not apply a rule that this court said was contrary to the terms that was drawn. It also did suspect you were under a condemn in Green v. Warren, where you said, well, merely reiterating the prosecutors' ethnic reasons and then claiming they were racially biased without analyzing the other evidence in reference to determine which of those reasons were contrary to the prosecutors' gender reasons. And it's also important that people make a decision at the same stage from which the state court heard such that both the state courts and the interests of a single partner do not discuss any of those issues. And so, I think this is pretty underwhelming in both areas of this case. In pre-arguing, the statute holds that there is nothing wrong with determination of a passage process for the law as a general jurisdiction. As a result, though, as long as the discourse determination of a passage relates to a law because it can be denied, the passage can be disavowed by proceeding to sentencing. Yes. Very often, in California, you have such an issue across centuries of evidence. They have evidence giving the reasons for the actions of one or the other. Yes. And it's pretty much unacceptable that even giving the reasons doesn't just lead to Oh, I understand. There's no problem here. I do know that there was one jury of three trials in this case. I don't know if you remember that. I'm trying to remember. I promise I don't. But, Julie, there was one trial. There was one jury of three trials. You're wrong, Your Honor. There was a jury of 10. So, I have the first three jurors. Oh, okay. And, again, I just need to clarify. We're sort of talking about the error in the court of appeals system. In the court of appeals, you explicitly rely on the electricity and facial recognition of the student by the prosecutor to approve someone. Basically, we did. As I was saying, I put a lot of the critical feedback in, and we did some more, and we did some more sentencing and stuff there, and we did that. The prosecutor always wins. The only difference is, they really purported to do this stuff prior to the case. The prosecutor's office, in this case, they were purporting to be on the DEA part of the case in case this were used, but they didn't do that. They might have just stepped over. That's exactly what, as Your Honor pointed out, used to fit in other trials. Now, all that just exists is within local review. And I would assume that the users in court will rely on those justifications in holding the trial in a balancing fight. The question is really the ultimate one, which is whether the prosecutor judges of these expenditures were motivated in substance part of the case, as you're just saying. So, let's assume that the prosecutor was keeping some of the funds, some of the dollars that he was raising, and he was just giving it to the court, and he was having some trouble with the regulation of the Supreme Court process. Basically, DLP is one of the most senior, and I'm going to make some assumptions here, is the Supreme Court, the positive evidence, part of the evidence, in terms of how we look at them, you will find them in the comparative jury analysis, the one tool, and the evidence in the toolbox. And we look at the various, the various steps that are involved. Comparative jury analysis certainly is important. But the ones that we include, did the, were the prosecutor's reasons for taking up all of the funding record as supported by the Supreme Court? So, the question is, is there an evidence that tells us that the Supreme Court prosecutor and DLP, that the Supreme Court's policy controls what you receive, what you don't, not on the court or case? We don't know, of course, that he took the money that the prosecutor had imposed, which is completely unconfirmed. So, what do you think about that? Well, I don't believe, what I partly do about that is, I think, I think that the prosecutor's credibility can be assessed on this record. Okay, hold on for a minute. So, the DLP records, does it also contain any of the financial documents, the prosecutor's credibility, under the authority of the Supreme Court? Is that true? No, I don't think so. Okay, hold on a minute. So, the DLP records, does it also contain any of the financial documents,  under the authority of the Supreme Court? Yes, I don't think it's a matter of the prosecutor. I think we're just looking at it as a matter of justification. The prosecutor, some years ago, he got a letter in June of 2015, where the record, or what he said, he said, was the evidence of the record, where the record states that some of his specifications were overly racist. Then, I believe, in this court case, it was in June of 2015, he said, he had the things on BBC analysis, and he said, a party, he used the court, since then, okay, we were just in love with that quote, so it was part of the case. He used, he used the Supreme Court's consent, and the Supreme Court's consent, he is required to look at the entirety of the record, both before and after the investigation. As you said, remember, the URL in this court, specifically, so that you'll learn how to look at the case. If you look at that, you still need, A, the primary justification, given by the prosecutor, and B, all of the evidence in the record, which tells us those specifications were racist. So, you're going to be subject to this, if you're on the procedure, is that right? Yes, I, I suppose I am. Yeah, I think you are. Well, my understanding is that a lot of people are pretentious, but, it's, it's easy. It's easy, it's easy. Thank you. Hi, good morning. Good morning.   I'm going to start with this report that says, in the very beginning, um, it is the first precedent in the history of the United States, and there is a couple of other procedents, so we need one, just one of those four papers. It's the top jurist training, one more than the PAYER, and the year, in this case, the very beginning.     for us, for us. It was five, the first three cases, and, um, the second, and the third, and the fourth, and the fifth, and the tenth. You presented the first three. So, we need a comm torso, number one, and some early scope, and ethnos, and then, the stage,  and so forth. Which we should have been some kind of clinical instruments, And then the suction analytics unit, Top Raw Computer. So, I've answered quite a few more challenges, I guess, in some of the more dangerous regions. And, when it was hard, and I think that was part of the problem, I suppose, there have been several different reasons. One was, you know, the issue about fear of cross-pollution. We've seen it, there's still a jury of peers, and, in the community, it should be much higher. So, if it's not fair, we need to have some kind of competition between primary, and, you know, not the children, but, the teens, and be careful, if you can. And, we need to recognize, it's really important, the challenges we face, first, three, before, and after. And, we all have to be very precise. We need a growing, we should say, we should be, aware of that, for a reason. And, a set of benchmarks, that are, that are very,   it's the issues, and the, the, the, the issue of, the,      of, of, of, of, of, of, of, of, of, of, of, of, of, of, of, of, of, of,     of, of, of, of, of, of, of, of, of, of, of. Exploring students' Drew Drew Drew Dew Glue
judges: Bea, Ikuta, Restani